FILED & JUDGMENT ENTERED
Steven T. Salata

Dec 08 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| **In Re:**<br><br>**Cox & Schepp, Inc.**<br><br>**Debtor.** | **Case No. 12-30019**<br>**Chapter 11** |
| **The Official Committee of Unsecured Creditors of Cox & Schepp, Inc.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Palmer Electric Company**<br><br>**Defendant.** | **Adversary Proceeding**<br>**No. 14-03023** |

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action to avoid and recover two payments as preferences under 11 U.S.C. § 547 and § 550 is currently before the Court on cross motions for summary judgment by plaintiff, the Official Committee of Unsecured Creditors of Cox & Schepp, Inc. (the Committee), and defendant, Palmer Electric Company (Palmer). As a core proceeding

under 28 U.S.C. § 157, this Court has jurisdiction pursuant to 28 U.S.C. §§ 151 and 1334. No issues of material fact remain as to the Committee's claim under 11 U.S.C. § 547(b); therefore, the Committee's motion as to the prima facie case of a preference claim is granted and Palmer's is denied. But, because significant factual disputes remain unresolved as to the defenses available to Palmer under 11 U.S.C. § 547(c)(1) and (2), both parties' motions for summary judgment as to those issues are denied.

The Debtor, Cox & Schepp, Inc. (Cox & Schepp), was a large general contractor primarily involved in commercial construction. Relevant to this matter, Cox & Schepp contracted with Quest Diagnostics Clinical Laboratories, Inc. (Quest) to complete a number of projects throughout Florida (the Quest Projects). In turn, Cox & Schepp contracted with Palmer to complete electrical work on three of the buildings part of the Quest Projects. Of those three, two required Cox & Schepp to pay Palmer within seven days of receipt of payment by Quest. The third required Cox & Schepp to pay Palmer within twenty-five days of invoice by Cox & Schepp to Quest. Palmer prospectively executed waivers surrendering any right to file liens against the improved properties in exchange for payment.

Cox & Schepp made the following payments to Palmer:

| **Invoice Date** | **Amount** | **Check Date** |
|---|---|---|
| February 16, 2011 | $9067.00 | August 16, 2011 |
| May 25, 2011 | $574.00 | July 12, 2011 |
| June 8, 2011 | $11,115.00 | July 29, 2011 |
| June 25, 2011 | $17,685.00 | October 25, 2011 |
| June 25, 2011 | $19,001.96 | October 25, 2011 |

The record is not entirely clear as to when Quest made payments to Cox & Schepp to trigger the payment terms under the subcontracts with Palmer.[1] At the very least, it appears that the July 11 payment was made within the terms of the contract, the July 29 payment was made within three weeks after Quest paid Cox & Schepp, and the August 16 payment was made two weeks after Quest paid Cox & Schepp. The fourth and fifth payments made on October 25 were made forty-four days after Quest paid Cox & Schepp.

The Committee filed the current adversary proceeding to recover the latter two payments, totaling $36,686.96, as they were made within ninety days of Cox & Schepp filing bankruptcy on January 5, 2012. After engaging in limited discovery, both parties moved for summary judgment. When confronted with cross motions for summary judgment, the Court "review[s] each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). On each motion, the Court will "'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (citation omitted).

"The preference statute implements the prime bankruptcy policy of equality of distribution among creditors. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally." *In re J.A. Jones, Inc.*, 361 B.R. 94, 99 (Bankr. W.D.N.C. 2007) (citations and quotation marks omitted). Under 11

[1] It bears noting that neither party sufficiently cited in their briefs to record pages or exhibits. When considering this issue, and others, the Court was forced to spend an inordinate amount of time and resources sifting through hundreds of pages of the record for simple facts such as dates and financial figures.

U.S.C. § 547(b), a transfer of an interest of the debtor in property may be avoided if made:

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made . . . on or within 90 days before the date of the filing of the petition; . . .
>
> (5) that enables such creditor to receive more than such creditor would receive if . . . the transfer had not been made.

*In re ESA Envtl. Specialists, Inc.*, 709 F.3d 388, 394 (4th Cir.) (alterations in original), *cert. denied sub nom. Campbell v. Hanover Ins. Co.*, 134 S. Ct. 221 (2013). However, transfers made in a contemporaneous exchange for new value or those made in the ordinary course of business are not avoidable. 11 U.S.C. § 547(c)(1), (2).

Palmer asserts varying arguments as to why the transfers are not recoverable under 11 U.S.C. § 547(b), including that the Committee lacks standing to pursue this action, Cox & Schepp was not insolvent at the time of the transfers, the transfers did not enable Palmer to receive more that it would as a unsecured creditor in the bankruptcy case, and the funds transferred were not the property of Cox & Schepp. The parties' central dispute relates to whether the release of Palmer's lien rights constitutes a contemporaneous exchange of new value. Alternatively, Palmer argues that the transfers were made in the ordinary course of business between the parties.

**I. Whether the Committee has standing to bring an action under 11 U.S.C. 547**

As an initial matter, Palmer challenges the Committee's standing, asserting that only a trustee or debtor in possession may bring a preference action. According to

Palmer, for the Committee to pursue this claim, it must first be appointed to do so under 11 U.S.C. 1123(b)(3)(B).

Under Chapter 11, a debtor in possession "occupies the shoes of a trustee in every way." *Yellowhouse Mach Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir. 1983) (citing, *inter alia*, 11 U.S.C. § 1107(a)). Indeed, "[a] debtor in possession holds its powers in trust for the benefit of creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit." *Id*. (alterations in original; citations and quotation marks omitted). A court need not formerly appoint a representative of the estate to enforce a claim when the confirmed plan grants such authority. *See Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1180 n.1 (5th Cir. 1987) ("Although the court did not formally and specifically appoint the creditor trustee to enforce the claims, the reorganization plan approved by the court recognized that the creditor trustee would have the responsibility of pursuing claims of the debtor. The court's approval of a plan granting this authority to the creditor trustee was sufficient, under the Bankruptcy Code, to confer on the creditor trustee standing to assert this claim.").

The power to bring preference actions is specifically granted to the Committee in Cox & Schepp's confirmed bankruptcy plan, which states that "[t]he Committee may also investigate, pursue, initiate, commence, file, prosecute, and enforce, and if necessary and appropriate, compromise any and all Avoidance Actions . . . ." Order Confirming Debtor's Third Amended Chapter 11 Plan, Exhibit A, § 8.3.2. Consequently, Palmer's motion for summary judgment as it relates to the Committee's standing is denied.

## II. Whether issues of material fact exist as to a prima facie claim under 11 U.S.C. § 547(b)

The Committee seeks summary judgment on all the elements of 11 U.S.C. § 547(b). Palmer likewise moves for summary judgment, challenging whether the funds transferred were property of Cox & Schepp, whether Cox & Schepp was insolvent at the time of the transfers, and whether the transfers allowed Palmer to receive more than it would have as an unsecured creditor. Palmer concedes the remaining elements of subsection 547(b).

### a. Whether the transfers to Palmer were a property interest of Cox & Schepp

Under subsection 547(b), only transfers of "an interest of the debtor in property" may be avoided as a preference. In other words, the power to avoid a transfer may only be invoked as against "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990).

The Committee asserts that the transfers were paid via check drawn on accounts held by Cox & Shepp and would thus have been part of the bankruptcy estate. Palmer does not refute the source or method of transfer of the funds. Rather, Palmer argues that the funds at the heart of this litigation were not property of Cox & Schepp, making the transfers not avoidable. According to Palmer, the funds paid to Cox & Schepp by Quest were, in fact, the property of Palmer the entire time. Because Florida lien law makes misapplication of construction funds a felony offense, Fla. Stat. § 713.345, Palmer argues

that Cox & Schepp merely held Palmer's funds in trust. Alternatively, Palmer asserts that the funds were ear marked by Quest for disbursement only to Palmer.

**1. Whether the funds were held in trust for the benefit of Palmer**

Turning first to Palmer's argument that the funds were held in trust, "[w]hen a debtor holds property in constructive trust under applicable nonbankruptcy law, the equitable interest in that property belongs to the trust beneficiary, not the debtor." 5 COLLIER ON BANKRUPTCY ¶ 547.03[2][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (explaining when a transfer is not an interest of the debtor in property under 11 U.S.C. 547(b)). Under Florida law, for a constructive trust to arise, there must be "(1) a promise, express or implied; (2) a transfer of the property based upon this promise; (3) a confidential relationship; and (4) unjust enrichment." *Musselman v. Cameron* (*In re Cameron)*, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006). Palmer has not argued the existence of several of these elements. Furthermore, "Florida courts will impress property with a constructive trust only if the trust res is specific, identifiable property or if it can be clearly traced in assets of the defendant which are claimed by the party seeking such relief." *Finkelstein v. Se. Bank, N.A.*, 490 So. 2d 976, 983 (Fla. Dist. Ct. App. 1986) (citation omitted). Palmer has made no argument or attempt to trace the funds paid for each project out of Cox & Schepp's accounts. Therefore, Palmer's motion for summary judgment as it relates to the funds being held in trust is denied.

**2. Whether the funds were earmarked solely distribution to Palmer**

Palmer next contends that the funds were earmarked by Quest for distribution to Palmer. Palmer asserts that Cox & Schepp had no choice but to distribute the funds to Palmer because a failure to do so would have amounted to a felony.

"The earmarking defense in bankruptcy is a judicially created exception to the statutory power of the bankruptcy trustee under § 547 to avoid or set aside an otherwise preferential transfer of assets." *ESA Envtl. Specialists, Inc.*, 709 F.3d at 394 (citation omitted). "As a judicially created exception to a statutory rule, the earmarking defense must be narrowly construed." *Id*. at 394 n.5 (citation omitted). "The earmarking doctrine applies only when the debtor borrows money from one creditor and the terms of that agreement require the debtor to use the loan proceeds to extinguish specific, designated, existing debt." *Id*. at 396 (citation omitted). In making this determination, courts consider "whether the debtor had the right to disburse the funds to whomever it wished, or whether [the] disbursement was limited to a particular old creditor or creditors under the agreement with the new creditor. *Id*. (alteration in original; citation and quotation marks omitted).

Despite the threat of criminal prosecution in Florida, Palmer has not established that Cox & Schepp could transfer the funds to Palmer only to the exclusion of its other creditors. Here, the transfers were made from Cox & Schepp's general operating account, meaning the transfers were not clearly earmarked, segregated, or traceable. Even if they were, the transaction would derive from an account receivable to Cox & Schepp; this is not a loan proceeds situation where "[o]ne creditor is transferred for another." 5 COLLIER ON BANKRUPTCY ¶ 547.03[2][a]. Accordingly, Palmer's motion for summary judgment as it applies to the earmarking doctrine is denied.

Consequently, the undisputed evidence indicates that the funds were the property of Cox & Schepp at the time of transfer. The Committee's motion for summary judgment on this element is therefore granted.

**b. Whether Cox & Schepp was insolvent at the time of the transfers**

For a transfer to be avoided under subsection 547(b), the transfer must be made while the debtor was insolvent. The Code defines the term "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). To determine whether a preferential transfer has occurred, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." *Id.* at § 547(f). "The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists." *Clay v. Traders Bank of Kansas City*, 708 F.2d 1347, 1351 (8th Cir. 1983) (citations omitted).

The Committee presented evidence that Cox & Schepp had debt exceeding $9,000,000 and assets of just under $8,000,000. Over $15,000,000 in claims were assessed and filed in the bankruptcy case. By contrast, Palmer selectively chooses figures from a variety of financial statements in an attempt to create a material issue of fact. For instance, Palmer points to Cox & Schepp's December 2011 balance sheet, which discloses assets at cost. By comparing that figure to an estimate of total debt on Cox & Schepp's schedules, Palmer asserts solvency. Comparing these line items from distinct, and unrelated statements is of little use in the preference inquiry. They are simply not comparable. Moreover, the statements from which Palmer selected these figures both indicate overall insolvency. Palmer's piecing together unrelated financial figures is not sufficient to rebut the presumption of insolvency, especially in hindsight, knowing the unsecured creditors in the bankruptcy case will receive pennies on the dollar

for their claims. Palmer's motion for summary judgment is thus denied on this issue and the Committee's is granted.

**c. Whether the transfers were for more than Palmer would have received as an unsecured creditor in a hypothetical bankruptcy under Chapter 7.**

To recover a payment as a preference, the transfer must yield a greater percentage of the underlying debt than the creditor would have received in liquidation under Chapter 7. 11 U.S.C. § 547(b)(5). Palmer received $36,686.96 during the preference period and is scheduled as an unsecured creditor being owed an additional $5331.33 making the total owed to Palmer over $42,000. The transfers account for approximately ninety percent of Palmer's total claim whereas the expected return to unsecured creditors is between three and six percent. As Palmer has put forth no evidence to call these figures into question or to otherwise raise a genuine issue of material fact, the Committee's motion for summary judgment on this element is granted and Palmer's is denied.

Because no issues of material fact remain unresolved as to the elements of a claim under subsection 547(b), the Committee's motion for summary judgment on the prima facie elements of a preference is granted.

**III. Whether Palmer's waiver of lien rights constitutes a contemporaneous exchange of new value**

Both parties next move for summary judgment on the issue of whether Palmer's waiver of lien rights equates to a contemporaneous exchange of new value pursuant to 11 U.S.C. 547(c)(1). Under that subsection, a transfer may not be avoided:

> to the extent that such transfer was—
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

> (B) in fact a substantially contemporaneous exchange[.]

*Id*. New value is defined as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

*Id*. at § 547(a)(2).

The parties have spent a great deal of time and energy contesting the applicability of this Court's decision in *In re J.A. Jones, Inc*. 361 B.R. 94. Similar to the case at hand, in *J.A. Jones*, the debtor was a large, commercial general contractor. *Id*. at 97. The defendants were numerous subcontractors who were paid within ninety days before the debtor declared bankruptcy. *Id*. at 97-98. At the time of each payment, the defendants executed state law lien releases that waived any rights against the improved property. *Id*. at 98. The question raised was whether such waivers for payments constituted new value for section 547(c)(1) purposes. *Id*. at 102. Assuming rational behavior, had the debtor not paid the defendants, the defendants would have liened the improved property, and the owner would be forced to pay the defendants to avoid foreclosure. *Id*. The owners would then have rights against the debtor for indemnification. If sufficient monies were still owed to the debtor, the owner would have a right of setoff under 11 U.S.C. § 553 and a secured claim under 11 U.S.C. § 506(a). *Id*. Under the indirect transfer theory, this waiver of lien rights and resulting inability for the owner to assert a setoff was seen as a contemporaneous exchange of new value. *Id*.

However, since *J.A. Jones* was decided, the Fourth Circuit Court of Appeals has considered a similar issue in *United Rentals, Inc. v. Angell*, 592 F.3d 525 (4th Cir. 2010).[2] The Fourth Circuit decided *United Rentals* in the context of a lien waiver under North Carolina law, but the lien waivers in the current matter were made under Florida law. Palmer asserts that distinctions in the pertinent Florida statutes make *United Rentals* inapplicable. *Compare* Fla. Stat. § 713.06(1) ("A materialman or laborer, either of whom is not in privity with the owner, or a subcontractor or sub-subcontractor who complies with the provisions of this part and is subject to the limitations thereof, has a lien on the real property improved for any money that is owed to him or her for labor, services, or materials furnished in accordance with his or her contract and with the direct contract and for any unpaid finance charges due under the lienor's contract."), *with* N.C.G.S. § 44A-8 ("Any person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.").

While that may be the case, even if the indirect transfer theory were applicable here, for value to pass, the property owner must still owe the general contractor money

[2] At the September 9, 2014 hearing on this matter, the Court requested that both parties submit supplemental briefing on whether *J.A. Jones*, and consequently the indirect transfer theory, remained viable in light of the Fourth Circuit's decision in *United Rentals*. Counsel for Palmer submitted a supplemental memorandum, but counsel for Cox & Schepp did not.

subject to setoff in the event the owner is forced to pay off a subcontractor's lien. Here, the record is unclear as to the amount, if any, that Quest still owed to Cox & Schepp on each project.

In addition, to succeed under this theory, the evidence would have to establish that the transfer was intended and in fact a contemporaneous exchange. 11 U.S.C. § 547(c)(1). "And when the disposition of a case turns on a determination of intent, courts must be especially cautious in granting summary judgment, since the resolution of that issue depends so much on the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination." *Morrison v. Nissan Co.*, 601 F.2d 139, 141 (4th Cir. 1979) (citation omitted). "This is particularly so where the issue of intent relates to an ambiguous contract or document, 'for the intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on motions for summary judgment.'" *Id.* (citation omitted).

The lien waivers related to the alleged preferential transfers stated they were given "IN CONSIDERATION of receipt of [the requested funds]." One waiver was signed on June 25, 2011 and the other on August 17, 2011. Factual issues remain as to whether the language of the waivers themselves evidences the intent to make a contemporaneous exchange. Likewise, the time between the execution of the waivers and the transfer, October 25, 2011, further calls into question the parties' intent and also whether a contemporaneous exchange actually occurred.

Both parties motions for summary judgment as related to 11 U.S.C. § 547(c)(1) are therefore denied.[3]

**IV. Whether the transfers were in the ordinary course of business between the parties.**

Both parties' final arguments relate to whether the transfers were made in the ordinary course of business between the parties. Under 11 U.S.C. 547(c)(2), a transfer may not be avoided:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms;

The burden is on the transferee to prove the elements under section 547(c)(2) by a preponderance of the evidence. *Advo-Sys., Inc. v. Maxway Corp.*, 37 F.3d 1044, 1047 (4th Cir. 1994). "This inquiry is 'peculiarly factual.'" *Id*. (citation omitted). The first element, whether the debt was incurred in the ordinary course of the parties' businesses or financial affairs, requires the court to consider whether the debt was "incurred in the routine operations of the debtor and the creditor" and "in a typical, arms-length commercial transaction that occurred in the marketplace." 5 COLLIER ON BANKRUPTCY ¶ 547.04[2][a][i].

The second element relates to the actual transfer and may be proven in either of two ways. The transferee may meet this burden by showing the transfer was made pursuant to an established course of dealing between the parties before the preference

[3] *See supra* note 1.

period, a subjective test. *Harman v. First American Bank of Maryland (In re Jeffrey Bigelow Design Grp., Inc.)*, 956 F.2d 479, 486 (4th Cir. 1992). In proving this element, "[t]he transferee must establish a 'baseline of dealing' so that the court may compare the transfers made during the preference period with the parties prior course of dealings." 5 COLLIER ON BANKRUPTCY ¶ 547.04[2][a][i]. Alternatively, the transferee may establish the second element by showing the transfer was made pursuant to an objective industry standard. *Advo-Sys.*, 37 F.3d at 1048. This prong provides the transferee "considerable latitude" and requires proof "that the debtor made its pre-petition preferential transfers in harmony with the range of terms prevailing as some relevant industry's norms." *Id*. at 1050 (citation omitted).

In reviewing the record in this case, there are numerous factual disputes left to be resolved regarding the highly fact driven ordinary course of business defense. For instance, under the subjective test, both parties claim the timing of the payments support their position. On the one hand, the Committee argues that the transfers were delayed quite a bit beyond the payment triggering terms of the contracts and more delinquent than any other payments. On the other hand, Palmer contends the payment timing was near the average number of days from invoice to payment and thus consistent with the parties' prior dealings. Taking these assertions in the light most favorable to the non-moving party, summary judgment is not appropriate on this record. Moreover, the parties have not presented sufficient evidence of the relevant industry standard to grant summary judgment under the objective test. Consequently, both parties' motions for summary judgment are denied on the issues pertaining to 11 U.S.C. 547(c)(2).

It is thus ORDERED:

1) Palmer's motion for summary judgment as it relates to the Committee's standing is denied.
2) The Committee's motion for summary judgment as to 11 U.S.C. 547(b) is granted and Palmer's is denied.
3) Both parties' motions for summary judgment as to 11 U.S.C. 547(c)(1) and (2) are denied.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court